1878.] PEOPLE ex rel. SIMS v. FIRE COMMISSIONERS. 437

Statement of case.

THE PEOPLE ex rel. CHARLES E. SIMS, Respondent, v. THE BOARD OF FIRE COMMISSIONERS OF THE CITY OF NEW YORK, Appellants.

THE PEOPLE ex rel. JOHN ROYAL, Respondent, v. THE SAME, Appellants.

The return to a writ of *certiorari* must be taken as conclusive and acted upon as true; if false in fact, the remedy is by action for a false return; if insufficient in form, by compelling a further and more specific return.

The provision of the New York charter of 1873 (§ 28, chap. 335, Laws of 1873), conferring upon the heads of departments powers to appoint and remove all chiefs of bureaus, clerks, officers, employees and subordinates in their respective departments, gives the power to remove at pleasure, save in the case of a "regular clerk or head of a bureau," in which case the power of removal is expressly limited to a removal after notice and a hearing, and for cause.

The word "clerk," as used in said provision, applies to a person employed in one of the departments to keep the records or accounts.

The provision of said charter (sec. 76), declaring that thereafter the appointment of the fire marshal and his assistants should be by the board of fire commissioners did not derogate from the general power of appointment and removal vested in the heads of departments.

The power to appoint to office or place, where the term and tenure are not defined, necessarily carries with it the power of removal.

Accordingly, where in the returns to writs of *certiorari* to review proceedings of the board of fire commissioners in removing the relators, it was stated that the relator S. "was surveyor in the board of combustibles in the fire department, * * * and was not regular clerk or head of bureau," and that the relator R. "was assistant to the fire marshal in the fire department," *held*, that the designation of the positions of the relators did not indicate or authorize the inference that they were in any sense clerks; that if either held the position of "regular clerks" it should have been made to appear; that by the returns it appeared that they were simply subordinate ministerial officers, removable at the pleasure of the board.

(Argued April 16, 1878; decided April 23, 1878.)

THESE were appeals from judgments of the General Term of the Supreme Court, in the first judicial department reversing and setting aside the proceedings of defendants,

whereby the relators were " dismissed from the service of this department," and restoring them to their positions; which proceedings were brought up for review by writ of *certiorari.*

In the case first entitled, the return to the writ stated : " That on the 14th August, 1877, the said relator was a surveyor in the bureau of combustibles in the fire department of the city of New York, and was not regular clerk or head of bureau." It then set forth certain proceedings of the board, closing with a resolution removing the relator.

In the case secondly above entitled, the return stated, that " the relator held the position of assistant to the fire marshal in the fire department," and set forth his removal by resolution of the board.

Further facts appear in the opinion.

*D. J. Dean,* for appellant. The return was conclusive as to the *status* of the relator. (*Haines* v. *Judges of Westchester,* 20 Wend., 625; *Rawson* v. *Adams,* 17 J. R., 131; ——— v. *Cowper,* 6 Mod., 90; *People* v. *Powers,* 19 Abb., 99; *Starkweather* v. *Seeley,* 45 Barb., 164; *People* v. *Morgan,* 65 id., 473; *In re Eighteenth Street,* 16 Abb., 169.) The duties of assistant to the fire marshal are not the duties of a clerk. (Laws of 1868, chap. 563; Laws of 1870, chap. 383, § 44, p. 899; Laws of 1871, chap. 584, § 5, p. 1277; Laws of 1871, chap. 742, p. 1705 ; Laws of 1873, chap. 335, § 76.) The power of the fire commissioners to appoint and remove the fire marshal, and all the subordinates in his bureau, is not limited by section 28 of the charter of 1873. (Laws of 1873, chap. 335, § 28, p. 49; Laws of 1870, chap. 383, § 44; Laws of 1871, chap. 584; Laws of 1873, chap. 335, § 76; Potter's Dwar. on Stat., 131, 273; Woodson's Elements of Juris., 36; Bac. Abr., tit. Statutes D.; *Harrington* v. *Rochester,* 10 Wend., 551.)

*Roswell D. Hatch,* for respondents. The board of commissioners had no authority to try and dismiss the relators, for

the reasons that they were regular clerks, and were never informed of the cause of their removal.   (Laws of 1873, chap. 355, § 28; *People ex rel. Munday*, Ct. App., ALLEN, J.; Worcester's Dict. on Com'l Law ; Bouvier's Law Dict.; Jacob's Law Dict.; Tomlin's Law Dict.; Wharton's Law Dict.; Soule on Eng. Syns., or Parallel Expressions, Webster's Dict.)   Upon a common law *certiorari* the court will inquire into the jurisdiction and examine the evidence. (*People* v. *Smith*, 45 N. Y., 772, 776, 777; *People* v. *Board of Police*, 39 id., 506; *People* v. *Betts*, 55 id., 600; *People* v. *Assessors*, 40 id., 154; *Mullins* v. *People*, 24 id., 399; *People* v. *Assessors*, 39 id., 81; *In re Clapp*, 5 Hun, 457 [Ct. of App.]; *Miller* v. *Bd. of Police*, Ct. App., ALLEN, J.; *People* v. *Stout*, 10 How., 171, 180; Laws of 1873, chap. 355, § 28.)   A *certiorari* to a subordinate tribunal operates as a stay of proceedings from the time of its service. (*Patchin* v. *Mayor of B'klyn*, 13 Wend., 664; *Conover* v. *Devlin*, 5 Abb., 182; Bac. Abr., sub. tit. Certiorari G.; Com. Dig., sub. tit. Certiorari.)

ALLEN, J.   We cannot go behind the return to the writ of certiorari to determine the character of the positions or offices from which the relators were removed.   That must be taken as conclusive, and acted upon as true.   If it is false in fact or insufficient in form in the former case, the remedy is by action for a false return, and in the latter by compelling a further and more specific return.   (*Haines* v. *Judges of Westchester*, 20 W. R., 625.)

The returns show that the relator Simms was " surveyor in the bureau of combustibles," and the relator Royal " assistant to the fire marshal in the fire department " of the city of New York, both subordinate officers or employees in the department created by the charter of 1873, of which the " board of fire commissioners," named as defendants in these proceedings, was the head.   (Laws of 1873, chap. 335, § 76.)   Simms' services were in the bureau, the principal officer of which is designated by the statute " inspec-

tor of combustibles." The bureau is charged with the exccution of all laws relating to the storage, sale and use of combustible materials. The bureau in which Royal was employed was charged with the investigation of the origin and cause of fires, the principal officer of which is designated as "fire marshal."

The commissioners constituting the board of fire commissioners are, by section twenty-eight of the charter, clothed with the power to appoint and remove all chiefs of bureaus, as also all clerks, officers, employees and subordinates in their department, except that no regular clerk or head of a bureau can be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation, and in every case of a removal, the true grounds thereof shall be forthwith indorsed upon the records of the department. · We have held that the discretion vested in the board to remove " regular clerks " and "·heads of bureaus " is not an unlimited discretion ; but that the power can only be exercised for some reasonable cause, either of neglect of duty or incompetency, or something affecting his character or fitness for the position. (*People ex rel. Munday* v. *Fire Commissioners*, 72 N. Y., 445.) But the statute, by distinguishing between these two classes of officials and other " clerks, officers, employees and subordinates," necessarily leaves those not thus named and expressly excepted from the operation of the general powers subject to removal at the pleasure of the board. This follows from the familiar rule of interpretation of statutes, *expressio unius est exclusio alterius*. The power to remove at pleasure is conferred in , general terms, and but two classes of all the officers and employees are excepted from its operation and given the benefit of a hearing and subjected to a removal only for cause. The Legislature, in section seventy-six, have, by reference, incorporated certain .parts of chapter 383 of the Laws of 1870, and chapter 584 of the Laws of 1871, as prescribing the general powers and duties of the fire marshal,

1878.] PEOPLE ex rel. SIMS v. FIRE COMMISSIONERS. 441

Opinion of the Court, per ALLEN, J.

and as by those acts the power of appointment of the fire marshal and his chief clerk, assistant clerk, and an assistant marshal was in the police board, it was declared that thereafter the appointment of the fire marshal and his assistants should be by the board of fire commissioners; but this did not derogate from the general powers of appointment and removal vested in the heads of departments by section twenty-eight of the act. The power of removal does not exist unless it is with the defendants, under section twenty-eight, or under the general and implied power, which, in the absence of some statutory provision on the subject, rests with the body having the power of appointment. The power to appoint to office or place where the term and tenure are not defined necessarily carries with it the power of removal. (*Ex parte Hennen*, 13 Peters, 230; *People* v. *Mayor, etc., of N. Y.*, 5 Barb., 43; *Laimbeer* v. *The Mayor, etc.*, 4 Sandf. S. C. R., 109.)

These relators were not " heads " of their respective bureaus. They were subordinates, appointed by the head of the department, to perform duties in their respective bureaus—the one (Simms) to assist as a " surveyor " in the execution of the laws regulating the storage, sale and use of combustible materials—that is, as it would seem, to ascertain, inspect and examine the condition and location of buildings in which such materials were kept or stored for sale or use, and the places of their deposit; and the other (Royal) to assist the fire marshal, the head of the bureau, in the investigation of the origin and cause of fires, and the performance of other duties charged upon the marshal and his bureau by the Laws of 1870 and 1871. The services of the relators were ministerial, and rendered under the direction of a superior, and were of a character requiring peculiar qualifications, and not such as could profitably or well be performed by one not specially educated to or prepared for them. The duties of both were to some extent specialties. They were certainly not clerical in any sense. The relators may or may not, in the performance of their duties, and as incident to

those duties, or connected with them, have rendered some service which might have been performed by a clerk, such as keeping a record of and reporting their proceedings, but that does not give character to their office or change the general nature of their employment.

The charter, section twenty-eight (*supra*), declares that the number and duties of all officers, clerks, employees and subordinates shall be such as the heads of the respective departments shall designate and approve, and it recognizes the fact that there may be employees and subordinates who are not clerks or "regular clerks."

If the relators were appointed as clerks, and held the position of "regular clerks," they should have made it to appear by the record of their appointment, or in some other way. The designation of their positions, and the name given to them by the defendant, and in the returns do not indicate or authorize the inference that they were in any sense clerks. They were clearly subordinate ministerial officers, and held their places at the pleasure of the appointing power. There may be good reasons why places of this character should be at the absolute disposal of the department responsible for the execution of the laws which do not apply to "regular clerks." A resort to lexicographers will not aid us in determining the meaning of the word "clerk," as used in the statute. It is enough that it was used, in its popular sense, as denoting one whose duties are clerical, and they may be very various, as suggested by the learned counsel for the respondents in his brief, but none of his definitions include duties of the character of those indicated by the name and title of office given the relators in the return. "Clerk" does not include every employee and subordinate of the department, as we should have to hold, if we yield to the claim of the relators, and the enumeration of the different classes of servants, and the exception of the two classes from the operation of the statute, would be without meaning upon such a holding. A clerk in offices is defined to be a person employed in an office, public or private, for keeping records or accounts,

whose business is to write or register, in proper form, the transactions of the tribunal or body to which he belongs. (Bouvier's Law Dic.) This is the common use of the word at this day, and in that sense it was used by the Legislature. The fact that certain offices were declared vacant by section 117 of the charter of 1873 does not bear upon the interpretation of the sections under consideration.

The judgment of the Supreme Court must be reversed, and the proceedings of the defendant affirmed.

All concur.

Judgment accordingly.